**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**_____**

**UNITED STATES OF AMERICA,**


    **V.**                                                                    **3:08-CR-198**

**BARCLAY J. VAN BUREN, JR.,**

                        **Defendant.**
**_____**

**THOMAS J. McAVOY,**
**Senior United States District Judge**


## DECISION & ORDER

## I.  INTRODUCTION

Defendant is charged in a one-count Indictment with failing to register as a sex

offender in violation of 18 U.S.C. § 2250(a).  Currently before the Court is Defendant's

motion seeking  to dismiss the Indictment on the following grounds: (1) the registration

requirement of the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. §

16901 _et seq_., did not apply to him because New York and North Carolina have yet to

implement SORNA making registration impossible;  (2) § 2250 violates the _Ex Post Facto_

Clause; (3) § 2250 violates the Due Process Clause; (4) the sex offender registration

requirements and § 2250 exceed Congress's authority under the Commerce Clause; (5)

the sex offender registration requirement violates the Tenth Amendment; (6) the sex

offender registration requirement violates the non-delegation doctrine; (7) § 2250 infringes

Defendant's right to travel as protected by the Privileges and Immunities Clause of the

1

Fourteenth Amendment and the Due Process Clause of the Fifth Amendment. The government has opposed the omnibus motion. See dkt. # 16.

## II.    BACKGROUND

### a.    The Indictment

The Indictment charges:

Between February 20, 2008 and March 7, 2008, in the Northern District of New York and elsewhere, BARCLAY VAN BUREN, JR., the defendant herein, an individual required to register under the Sex Offender Registration and Notification Act, by reason of his conviction under federal law, did travel in interstate commerce and did knowingly fail to register and update his registration as required by law.

In violation of Title 18, United States Code, Section 2250(a).

Indictment, dkt. # 6.

In a Bill of Particulars, the government asserts that Van Buren violated § 2250(a) because he "failed to update the New York registry with respect to a change of residence during the time period specified in the indictment." Dkt. # 19; see 42 U.S.C. § 16913(c)(requiring a sex offender to update his registration within 3 days after changing his name, residence, employment, or student status).

### b.    Legislative Background

The Adam Walsh Child Protection and Safety Act of 2006 ("the Walsh Act") was enacted "[t]o protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims." Pub.L. No. 109-248, 120 Stat. 587 (July 27, 2006).  Title I of the Walsh Act codified the "Sex Offender Registration and Notification Act," 42 U.S.C. § 16911 et seq., ("SORNA").  "The purpose of SORNA is 'to protect the

2

public from sex offenders and offenders against children' by establishing 'a comprehensive national system' for the registration of sex offenders." United States v. Zuniga, 2008 WL 2184118, at * 5 (D. Neb. May 23, 2008) (quoting 42 U.S.C. § 16901). "Pursuant to SORNA, each jurisdiction (including each state) must maintain 'a jurisdiction-wide sex offender registry' that conforms to the requirements of SORNA." Id. (citing 42 U.S.C. §§ 16911(10), 16912(a)).  The Attorney General is required to set up and maintain a "National Sex Offender Registry" to share the information on a nation-wide basis.[1]  SORNA "was intended to close loopholes, especially to prevent sex offenders from being lost to tracking efforts as they travel from state to state." United States v. Ditomasso, --- F. Supp. 2d ----, 2008 WL 1994866, at * 8 (D. RI May 8, 2008)(citing 152 Cong. Rec. at 8013).

A "sex offender" is "an individual who was convicted of a sex offense." 42 U.S.C. § 16911(1).   A sex offense, in turn, includes "a criminal offense that is a specified offense against a minor. . . ." 42 U. S. C. § 16911(5)(A)(ii).  A "specified offense against a minor" includes "(G) Possession, production, or distribution of child pornography."  42 U.S.C. § 16911(7)(G).

SORNA's registration requirement provides:

(a) In general

A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee,

---

[1] In this regard, the Attorney General is required to compile a national database of all registered sex offenders, 42 U.S.C. § 16919; maintain a National Sex Offender Public website that includes relevant sex offender information and that a has full field search capabilities, 42 U.S.C. §§ 16918, 16920; implement multi-jurisdictional training, conferences, and meetings to facilitate the implementation of SORNA, and develop computer software to assist the states and other jurisdictions to establish and operate uniform sex offender registries and internet sites. 42 U.S.C. § 16923.

and where the offender is a student.  For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b) Initial registration

The sex offender shall initially register–

(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the registration current

A sex offender shall, not later than 3 business days after each change of name, residence, employment or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry.  That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) Initial registration of sex offenders unable to comply with subsection (b) of this section

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

42 U.S.C. § 16913.

Pursuant to 42 U.S.C. § 16913(d), which authorizes the United States Attorney General to "specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006," 42 U.S.C. § 16913(d), the Attorney General issued an interim rule on February 28, 2007.  This rule made SORNA's requirements applicable "to

4

all sex offenders, including sex offenders convicted of the offense for which registration is required prior to [SORNA's] enactment . . . ."  28 C.F.R. § 72.3.

As well as mandating registration, "SORNA creates a new federal crime for those individuals who fail to register, or to keep their registration current, despite being required to do so by subjecting the sex offender to fines or imprisonment up to ten years, or both." United States v. Madera, 528 F.3d 852, 855 (11th Cir. 2008).  Codified at 18 U.S.C. § 2250, this provides:

> (a) In general. –Whoever–
>
> > (1) is required to register under the Sex Offender Registration and Notification Act;
> >
> > (2)    (A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law . . . ; or
> >
> > (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
> >
> > (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
>
> shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a).

**c.    Factual Background**[2]

On March 19, 2002, Van Buren pled guilty in the Northern District of New York to Receipt of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(2)(A), 2256.[3]   He was

---

[2]The factual background is taken from the government's papers, affidavits, and exhibits filed in the instant case. These facts are assumed to be true for purposes of this motion.

[3] The offense occurred as a part of a sting operation run by the United States Postal Inspection

(continued...)

sentenced on July 18, 2002 to a 24-month term of imprisonment, and a term of supervised release of 3 years upon completion of his prison term.

As a result of that conviction, Van Buren was classified as a level II sex offender pursuant to N.Y. Correct. Law § 168-a, *et seq.*, which required him to register with the New York State Sex Offender Registry.  Van Buren signed a New York State Sex Offender Registration form on June 24, 2004 which notified him of his registration obligations as a sex offender.  He also signed New York State Sex Offender Change of Address Forms on seven (7) subsequent occasions.[4]

On supervised release, Van Buren failed to complete mental health treatment by having unapproved contact with individuals under the age of 18 and not abiding by the rules of the treatment program. On November 10, 2005, Van Buren's term of supervised release was revoked and he was sentenced to 6 months imprisonment and 30 months supervised release.

In July, 2006, on his second term of supervised release, Van Buren was accepted into a sex offender treatment program at the Tompkins County Mental Health Clinic in Ithaca, New York.  Based on the recommendation from the sex offender treatment provider, Van Buren consented to and the Court approved the imposition of home confinement as a condition of his supervised release.

On October 13, 2006, during an interview with U.S. Probation officers, Van Buren

---

[3](...continued)
Service. Defendant answered an advertisement placed on the internet as part of the sting, and purchased a video depicting child pornography which he received through the U.S. mail.

[4]These forms were signed by Defendant on June 7, 2004; May 5, 2005; May 15, 2005; May 15, 2006; June 5, 2006; October 17, 2007 and October 25, 2007.

submitted to a polygraph examination which revealed he was engaging in deceptive behavior.  Upon further questioning, he admitted to an incident occurring in a bookstore at which he sexually abused a 5-7 year old boy in a bathroom.  He also admitted to fantasies of going to a school with a gun, taking over a classroom, sexually abusing the teacher and students, and then killing himself.  Van Buren was advised at the conclusion of the interview to go directly home and remain there.  He was reminded that he was on home confinement and that there would be an immediate response should he leave his residence.

On the evening of October 13, 2006, a U.S. Probation officer conducted a home visit at Van Buren's residence and found Van Buren on the phone with the suicide crisis line. After a lengthy discussion, Van Buren assured the U.S. Probation officer that he had no plans to injure himself.   However, on October 15, 2006, Van Buren contacted the crisis center and disclosed that he had attempted suicide by overdosing on his medications. After he was stabilized, Van Buren was transferred to the crisis unit at Binghamton General Hospital in Binghamton, N.Y.   Van Buren was not admitted to the unit.

The U.S. Probation Department petitioned the Court on October 16, 2006 to find defendant in violation of the terms of his supervised release.  On October 19, 2006,  Van Buren admitting that he violated the terms of his supervised release because he had "failed to refrain from a place where individuals under the age of 18 are likely to congregate."  He was sentenced to twelve (12) months imprisonment and eighteen (18) months supervised release thereafter.

On August 23, 2007, approximately two months before he was released from FCI Butner, Van Buren was advised of his obligation to register as a sex offender and he

signed an acknowledgment of this obligation.  He was released from FCI Butner in

October of 2007, and his most recent term of supervised release commenced on October

15, 2007.  Van Buren met with his U.S. Probation officer on October 17, 2007.  At that

meeting, he signed a form titled "UNITED STATES PROBATION SYSTEM OFFENDER

NOTICE AND ACKNOWLEDGMENT OF DUTY TO REGISTER AS A SEX OFFENDER."

The form notified defendant of his registration obligations under SORNA, and warned that

if he failed to comply he could be charged pursuant to 18 U.S.C. § 2250.  Home

confinement was again imposed as a condition of his supervised release.  He was placed

on an electronic monitoring program to enforce this condition.  He had a permanent ankle

bracelet and a GPS device which he was required to have with him at all times.  The ankle

bracelet was monitored by a base unit in his room, which notified the monitoring company

when he was out of range of the unit.  He was required to have the GPS device charged

and with him whenever he had permission to leave his room (grocery shopping, mental

health evaluations, probation appointments, etc.).

On January 3, 2008 Van Buren again described to his supervising U.S. Probation

officer his thoughts about causing harm to others. He talked about taking women and

children hostage, and sexually assaulting the women before killing them and their children.

He stated that he would then kill himself or cause the police to kill him.  Van Buren also

described thoughts of taking a gun into the federal building to kill his U.S. Probation

officer.  He was taken to the crisis center at Binghamton General Hospital for a mental

health evaluation.  He was released but provided with medication which he claimed

stopped him from having the thoughts he had described.

On February 5, 2008, Van Buren had a lengthy conversation with his U.S.

8

Probation officer about being honest about his conduct and thoughts, and he disclosed that he was afraid to tell the truth due to a fear of civil commitment.  Van Buren's registered address at that time was at the Dixie Hotel at 106 Henry Street, Binghamton, New York.  Since most of the occupants at the hotel were either registered sex offenders or New York State parolees, the owner of the hotel required the residents to sign in and sign out every time they entered or exited the building.

On February 20, 2008, Van Buren signed out of 106 Henry Street and subsequently failed to return or contact his U.S. Probation officer.  The monitoring company notified the U.S. Probation Department that the ankle bracelet was out of range and the GPS device was not able to track Van Buren (either the battery was dead or it had been destroyed).  On February 25, 2008, the U.S. Probation Department filed a petition with this Court alleging that Van Buren violated the conditions of his supervised release (home confinement), and a warrant was issued for his arrest.  On March 7, 2008, the U.S. Marshals Service filed a criminal complaint alleging Van Buren failed to register or update his address information as required by the SORNA, in violation of 18 U.S.C. § 2250(a), and an arrest warrant was issued.

Van Buren was arrested by law enforcement officers at 8:30 p.m. on March 7, 2008 at his mother's residence in Burlington, North Carolina.  At no time between February 20, 2008 and his arrest on March 7, 2008 did the defendant update his address with the New York State Sex Offender Registry.

On April 27, 2008, Van Buren appeared before this Court and admitted to violating the terms of his supervised release by failing to notify his probation officer before leaving the district and removing his ankle bracelet.  The Court sentenced him to 6 months

incarceration, the maximum remaining term of imprisonment in connection with his currently imposed term of supervised release.  He was indicted by the Grand Jury on April 17, 2008 and charged with one count of failing to register and update his registration as required by SORNA, in violation of 18 U.S.C. § 2250(a).

## III.   DISCUSSION

### a.   Application of SORNA to Defendant

Van Buren's 2002 conviction for Receipt of Child Pornography in violation of 18 U.S.C. §§ 2252(a)(2)(A) & 2256 renders him a sex offender who must register under SORNA and who must keep his registration current. 42 U.S.C. §§ 16911(1), 16911(5)(A)(ii), 16911(7)(G), 16913(b) - (d); 28 C.F.R. § 72.3.  He argues, however, that SORNA does not apply to him for two reasons. First, he argues that

> the Attorney General has not issued a regulation declaring that SORNA applies to those convicted before the Act is implemented in a particular state. Thus, no authority exists making SORNA retroactive in jurisdictions that have yet to do what the Act requires. Moreover, the Attorney General's SMART Guidelines[5] affirmatively indicate that SORNA is not effective in pre-implementation jurisdictions. The following language makes plain that sex offenders with "pre-SORNA implementation convictions," like Van Buren, have a duty to register only after the jurisdiction implements the federal law:
>
> > With respect to sex offenders with pre-SORNA or pre-SORNA implementation convictions who remain in the prisoner, supervision, or registered sex offender populations at the time of implementation . . . jurisdictions should endeavor to register them with SORNA quickly as possible.
>
> 72 Fed. Reg. at 30228.

Def. Mem. L. p. 7 (footnote added).  Second, he asserts that because New York and North

---

[5] On May 30, 2007, the Attorney General issued the Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking ("SMART") Guidelines for the purpose of providing "guidance and assistance" to jurisdictions in implementing SORNA.  72 Fed. Reg. at 30210.

Carolina have yet to implement SORNA, it was impossible for him to comply with the Act's constraints. See Def. Mem. L. p. 7-8.

The arguments are without merit.  As indicated above, on February 28, 2007, the Attorney General issued an interim rule pursuant to his authority under 42 U.S.C. § 16913(d) that made SORNA's requirements applicable "to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to [SORNA's] enactment . . . ."  28 C.F.R. § 72.3.  Van Buren is a sex offender "convicted of [an] offense for which registration is required" even though the conviction was "prior to [SORNA's] enactment." Id.  Accordingly, he must register and keep his registration current in compliance with SORNA. 42 U.S.C. §§ 16911(1), 16911(5)(A)(ii), 16911(7)(G), 16913(b) - (d).

Implementation of SORNA's administrative components in New York or North Carolina is not required for Van Buren to comply.

> While it may be true that the states have until July 2009 to implement certain administrative portions of the statute, the statute itself became effective in July 2006. Therefore, whether mandated by New York, [North Carolina][6] or SORNA, registering is not optional. As the Government correctly points out, [VanBuren] was a person convicted of a sex offense, thus required to register under the statute. Moreover, both New York and [North Carolina] required that he register. In addition, even if he moved from the state, [VanBuren] was informed of his obligation to register as demonstrated by his

---

[6]United States v. Hester dealt with a Defendant who had registered as a sex offender in New York, absconded from the supervision of the Schenectady County Probation Department, and was later arrested in Florida. 2008 WL 351677, at *1 .  He did not register his change of residence as required by SORNA, and, thus, was charged with violations of 18 U.S.C. § 2250(a). Id.  Because of the applicability of the quoted passage from Hester to the instant case, see United States v. David,2008 WL 2045830 (W.D.N.C. May 12, 2008)(discussing SORNA registration in North Carolina), the Court has substituted North Carolina for Florida and Van Buren's names for Hester's name.

11

initialing of the New York sex offender registration form.[7]

United States v. Hester, 2008 WL 351677, at *2  (N.D.N.Y. Feb. 7, 2008) (alterations and footnotes added).

Compliance with the registration requirements of SORNA is possible in states that have yet to implemented SORNA by registering through the state's sex offender registry. See United States v. Fuller,  2008 WL 2437869, at * 2 (N.D.N.Y.  June 13, 2008);[8] Hester, 2008 WL 351677, at *2  ("[C]ompliance was not impossible, despite arguments to the contrary. As mentioned, both states had maintained sex offender registries both before and after the enactment of the Walsh Act.");  Ditomasso, 2008 WL 1994866, at *3 - *4 (Even though Rhode Island had not yet implemented SORNA, "Defendant was able to comply [with SORNA's registration requirements] because Rhode Island, like every other state, has adopted Megan's Laws and requires registration. . . . . [B]oth the structure and purpose of [SORNA] show that Congress intended for sex offenders to register in their states regardless of whether a state has fully implemented SORNA."); United States v. Adkins, 2007 WL 4335457, at * 6  (N.D. Ind. Dec. 7, 2007)("[T]he fact that the states have

---

[7]The facts in the instant case are more compelling than in Hester because Van Buren signed a "UNITED STATES PROBATION SYSTEM OFFENDER NOTICE AND ACKNOWLEDGMENT OF DUTY TO REGISTER AS A SEX OFFENDER" which notified him of his registration obligations under SORNA and the criminal penalty under 18 U.S.C. § 2250 if he failed to comply.

[8] Judge Scullin wrote in Fuller:

In order to keep his registration current, a sex offender must "appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry." 42 U.S.C. § 16913(c). Thus, an offender must (1) present himself before the appropriate state official and (2) inform that official of all of his relevant personal information. . . . [T]he information that SORNA requires a sex offender to provide is not much different than New York's current requirements and does not require New York to implement new mechanisms to be able to receive this information.

2008 WL 2437869, at * 2.

not yet met their obligations under SORNA ... is of no consequence in determining whether it was possible for [a] defendant to meet his own obligations under the Act."). Implementation of SORNA's administrative procedures is not a precondition of the registration requirement.[9]

Further, the Federal Register does not say that covered individuals do not have to register until SORNA is implemented in a particular state.  Rather, the cited-portion of the Federal Register deals with the difficulties jurisdictions may have in initially registering sex offenders "in conformity with SORNA as quickly as possible." See 72 Fed. Reg. at 30228. However, the section also provides:

> As discussed in Part II.C of these Guidelines, <u>SORNA applies to all sex offenders, including those convicted of their registration offenses prior</u> to the enactment of SORNA or prior <u>to particular jurisdictions' incorporation of the SORNA requirements into their programs</u>.

Id. (emphasis added).

Van Buren was advised of SORNA's registration requirements upon his most recent release from incarceration, and he registered in compliance with SORNA through New York's Sex Offender Registry shortly after his release. There is no merit to his arguments that SORNA did not apply to him or that he could not register. The motion on this ground is denied.

_____

[9] Implementation by a jurisdiction of the administrative provisions of SORNA is not required for an individual to comply therewith, but rather is necessary to entitle a jurisdiction to receive federal funds tied to the statute. See 42 U.S.C. § 16925(a) (A jurisdiction that fails to timely comply with the requirements of SORNA "shall not receive 10 percent of the funds that would otherwise be allocated for that fiscal year to the jurisdiction" for local law enforcement and justice assistance programs."); Ditomasso, 2008 WL 1994866, at * 12 (The "state component of SORNA is voluntary. States have the option not to comply, at the risk of losing a portion of their federal funding.")(citing 42 U.S.C. § 16925(a)); see also 42 U.S.C. § 3750 et seq.

**b.**    ***Ex Post Facto* Clause**

In an argument dependent on the one above, Van Buren argues that "[p]unishing [him] for failing to register under SORNA – a law not yet applicable to him – would violate the *Ex Post Facto* Clause of the Constitution." Def. Mem. L. p. 8.  The argument is without merit.  Because SORNA is applicable to him, and because Van Buren is charged with violating § 2250 for conduct that occurred after SORNA was enacted, there is no *Ex Post Facto* Clause violation. See Collins v. Youngblood, 497 U.S. 37, 41-42 (1990)(A law violates the *Ex Post Facto* Clause if it imposes a punishment for an act that was not criminal at the time it was committed or it imposes a punishment greater than that which was originally prescribed at the time the offense was committed.); United States v. May, — F. 3d —, —, 2008 WL 2917766, at *7 (8th Cir. July 31, 2008)(rejecting an *Ex Post Facto* Clause challenge to SORNA). The motion on this ground is denied.

**c.**    **Due Process Clause**

In an another argument dependant upon his contention that SORNA does not apply to him, Van Buren argues that "[c]riminalizing the failure to do something that is impossible to do violates the Due Process Clause's guarantee of fundamental fairness."  Def. Mem. L. p. 9.  In this regard, he asserts that "SORNA explicitly provides that one is 'unable' to register in a jurisdiction where the Act has yet to be implemented. 42 U.S.C. § 16913(d)." Id.  Defendant mis-reads § 16913(d).

Section 16913(d) authorizes the Attorney General "to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 *or* its implementation in a particular jurisdiction, and to prescribe rules for the registration of any

14

such sex offenders . . . who are unable to comply with subsection (b) of this section."  42 U.S.C. § 16913(d)(emphasis added).  Subsection (b) of § 16913, in turn, requires that sex offenders "initially register" either "before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement" or "not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment."  42 U.S.C. § 16913(b).

Thus, § 16913(d) applies to individuals who are "unable to comply" with the *initial registration requirement* because they were either released or sentenced without imprisonment before SORNA was enacted.  While it is true that Van Buren completed his "sentence of imprisonment with respect to the offense giving rise to the registration requirement" before SORNA was enacted, thus making initial registration impossible in strict compliance with § 16913(b), § 16913(d) allows the Attorney General to make the provisions of SORNA retroactively applicable to "sex offenders convicted before July 27, 2006 *or* its implementation in a particular jurisdiction."  The Attorney General's authority in this regard is in the disjunctive.  It is not dependent on state implementation of SORNA's administrative requirements.  Inasmuch as the Attorney General has exercised this authority, Van Buren was required to register. See Madera, 528 F.3d at 857 ("It is now clear, following the Attorney General's pronouncement of the interim rule, that SORNA is to be retroactively applied to sex offenders convicted prior to SORNA's enactment.").

For the reasons discussed above, registration, and updating of such registration, is not impossible in New York or in North Carolina.  Van Buren has already complied with his initial registration requirement and signed an acknowledgment of his continuing duty under SORNA.  Accordingly, Van Buren was not deprived of due process either because of an

impossibility in registering and updating his registration information, see Fuller,  2008 WL 2437869, at * 3 (Denying due process challenge because "New York State's failure to implement SORNA did not impede Defendant from providing state officials with the required information."), or from a lack of  notice of the registration and updating requirements. See Hester, 2008 WL 351677, at *2 (Denying due process challenge because, "even if he moved from the state, Hester was informed of his obligation to register as demonstrated by his initialing of the New York sex offender registration form. Thus, Hester had sufficient notice that failure to register and update his registration was illegal. . . . Furthermore, compliance was not impossible . . . . [B]oth states had maintained sex offender registries both before and after the enactment of the Walsh Act." );  United States. v. Pitts, 2007 WL 3353423, at * 7 (M.D. La. Nov. 7, 2007)(Denying due process challenge because defendant had "fair notice" and because registration was not impossible since Virginia and Louisiana both required defendant to register through their state systems.).  The motion in this regard is denied.

### d.    Commerce Clause

Van Buren argues that SORNA's registration requirement, 42 U.S.C. § 16913, and its criminal provision, 18 U.S.C. § 2250, are invalid under the Commerce Clause because SORNA does not fall into any of the three broad categories of activity that Congress may regulate under its commerce power. See Def. Mem. L. pp. 10-18 (citing, *inter alia*, United States v. Lopez, 514 U.S. 549 (1995) and United States v. Morrison, 529 U.S. 598 (2000)).  In support of this argument, Defendant contends that "Congress lacks the authority to direct individuals convicted of purely local offenses to register as state sex

16

offenders" and that, without registration, there can be no basis for a Section 2250(a) prosecution. Def. Mem. L. pp. 9-10; see id. p. 10 ("Under modern Commerce Clause jurisprudence, . . . it is clear that Congress does not have the power to impose registration requirements on individual citizens convicted of purely intrastate offenses.").  Defendant asserts that "SORNA's criminal provision, 18 U.S.C. § 2250, is also invalid under the Commerce Clause. Like the registration requirements, Section 2250 does not fall into any of the three broad categories of activity that Congress may regulate under its commerce power." Id. p. 14 (citation and interior quotation marks omitted).

In its initial opposition papers, the government correctly points out that Van Buren's predicate conviction was a federal conviction for possession of child pornography and that, therefore, he was not convicted of a "purely local offense." Govt. Mem L. pp. 22-23.  The government further indicated that Van Buren is being prosecuted under 2250(a)(2)(A) because his predicate offense is a federal conviction, not § 2250(a)(2)(B) which requires a state conviction and travel in interstate commerce.  Id.; see 18 U.S.C. § 2250(a).[10] However, because the government's opposition did not explain how an offense charged under § 2250(a)(2)(A) falls within the authority conferred by the Commerce Clause, nor did it specifically address Defendant's argument that SORNA's registration requirement was enacted without constitutional authority, the Court ordered the government to provide further briefing on the Commerce Clause challenge. See 7/23/08 Dec. & Ord. [dkt. #18].

In its supplemental brief, the government contends that Congress's enactment of

_____

[10]An offense occurs under § 2250(a) when: (1) a sex offender as defined under SORNA and, therefore, required to register under SORNA; (2) either (A) is a sex offender because of a federal conviction, or (B) traveled in interstate commerce; and (3) knowingly failed to register or update a registration as required by SORNA. 18 U.S.C. § 2250(a).

SORNA "was a proper exercise of the Congress's Commerce Clause powers to regulate persons in interstate commerce and activities having a substantial relation to interstate commerce."  Govt. Suppl. Mem. L. p. 10 [dkt. # 20].  In making this argument, the government views SORNA in its totality, not differentiating its registration and criminal components. Id.  The government contends that "this statute is rationally related to congressional authority to protect and inform the public by tracking and identifying sex offenders who travel from state to state," id., and, therefore, is authorized under a line of cases recognizing Commerce Clause authority in connection with the Necessary and Proper Clause and in matters that affect several states but which "defy a local solution." Id. p. 6.  The government also notes that, although interstate travel is not an element of an offense under § 2250(a)(2)(A), "this case involves a defendant with a federal conviction[] who happened to travel in interstate commerce." Id. p. 5.

Defendant filed a supplemental reply brief, arguing that SORNA is facially invalid because it reaches individuals who may never enter interstate commerce. Dkt. # 22 pp. 1-4; see id. p. 1, fn. 1 ("[T]he fact of Van Buren's federal conviction does nothing to alter a facial challenge to § 2250 and SORNA.").  In this regard, Van Buren argues that because § 16913 and § 2250(a)(2)(A) may be applied to individuals who never enter the stream of interstate commerce, Congress lacked authority to enact SORNA. Id. pp. 1-4; see id. p. 2 ("[T]he government appears to assume that if Van Buren were found to have stayed completely within the borders of New York, his affect on interstate commerce would still be equivalent to a sex offender convicted under state law who later traveled across state lines.").

Thus, the Court will proceed to determine whether Van Buren has mounted a

18

successful facial challenge to 42 U.S.C. § 16913 and/or 18 U.S.C. § 2250(a).[11]

"Facial challenges arise most often when a party claims a deprivation of a constitutionally protected liberty." United States v. Tom, --- F. Supp.2d ----, 2008 WL 2348201, at * 2 (D. Minn.  May 23, 2008)(citing Wash. State Grange v. Wash. State Republican Party, --- U.S. ----, 128 S. Ct. 1184, 1187, 170 L. Ed.2d 151 (2008)(examining facial validity of election law with respect to First Amendment); United States v. Salerno, 481 U.S. 739, 755, 107 S. Ct. 2095, 95 L. Ed.2d 697 (1987)(holding that Bail Reform Act provision was not facially invalid under Fifth or Eighth Amendments)).  Such "'challenges are best when infrequent,' and are not the preferred means for challenging Congress's power to enact a statute." Id.  (quoting Sabri v. United States, 541 U.S. 600, 608-10, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004) (rejecting "facial" challenge to Congress's power to enact criminal bribery statute and characterizing constitutional claim as "an overbreadth challenge")).  Nonetheless, some "federal courts have held that Salerno must be applied[] when ruling on facial challenges to the constitutionality of a federal statute under the Commerce Clause." United States v. Trent,  2008 WL 2897089, at * 5 (S.D. Ohio July 24, 2008)(citing Rancho Viejo, LLC v. Norton, 323 F.3d 1062, 1077-78 (D.C. Cir. 2003), cert. denied, 540 U.S. 1218 (2004); United States v. Sage, 92 F.3d 101, 106 (2d Cir. 1996)).

A facial challenge is successful only when a party "'establish[es] that no set of circumstances exists under which the Act would be valid,' i.e. that the law is unconstitutional in all of its applications." Wash. State Grange, 128 S. Ct. at 1190 (quoting

---

[11] Inasmuch as the Indictment charges that Van Buren did travel in interstate commerce at around, or in connection with, the charged violation of § 2250(a), the statute, as applied in this case, does have some interstate nexus. Whether that interstate nexus will be established is an issue yet to be determined, but the possibility of such a nexus is present at this time.

Salerno, 481 U.S. at 745).  Thus, a party mounting a facial challenge to a statute faces the

difficult burden of establishing that the statute would be invalid in all of its applications.

Trent,  2008 WL 2897089, at * 5.

As indicated, the government contends that Congress possessed authority to enact

SORNA by virtue of the Commerce and Necessary and Proper Clauses.

> The Commerce and Necessary and Proper Clauses are in Article 1, Section
> 8 of the United States Constitution, which governs Congress's power to
> enact statutes. The Commerce Clause authorizes Congress "[t]o regulate
> Commerce ... among the several States." U.S. Const. art. 1, § 8, cl. 3. The
> Necessary and Proper Clause authorizes Congress "to make all laws which
> shall be necessary and proper for carrying into Execution the forgoing
> Powers, and all other Powers vested by this Constitution in the Government
> of the United States, or in any Department or Officer thereof." Id. cl. 18. "The
> powers not delegated to the United States by the Constitution, nor prohibited
> by it to the States, are reserved to the States respectively, or to the people."
> U.S. Const. amend. X. If Congress has exceeded its constitutional authority
> in enacting a statute, then the statute may not be given effect and an action
> founded on it must be dismissed. United States v. Morrison, 529 U.S. 598,
> 604, 120 S. Ct. 1740, 146 L. Ed.2d 658 (2000); United States v. Lopez, 514
> U.S. 549, 551, 115 S. Ct. 1624, 131 L. Ed.2d 626 (1995); [United States v.
> Comstock, 507 F. Supp.2d 522, 560 (E.D.N.C. 2007).]
>
> The Commerce Clause authorizes Congress to (1) "regulate the use of the
> channels of commerce"; (2) "regulate and protect the instrumentalities of
> interstate commerce, or persons or things in interstate commerce, even
> though the threat may come only from intrastate activities"; and (3) "regulate
> those activities having a substantial relation to interstate commerce." Lopez,
> 514 U.S. at 558-59, 115 S. Ct. 1624 (1995); see also Morrison, 529 U.S. at
> 608 - 09, 120 S. Ct. 1740. In furtherance of this power, Congress may make
> any "necessary and proper" law. U.S. Const. art. 1, § 8, cl. 18.

United States v. Tom, --- F. Supp.2d ----, 2008 WL 2348201, at * 3 (D. Minn.  May 23,

2008).

To date, over 75 federal courts have addressed the constitutionality of SORNA, and

a majority of these cases have addressed Congress's authority to enact the statute under

the Commerce Clause.  All but two, United States v. Waybright, --- F. Supp.2d ----, 2008

20

WL 2380946 (D. Mont. June 11, 2008) and United States v. Powers, 544 F. Supp.2d 1331

(M.D. Fla. 2008), have found SORNA to be constitutionally enacted.  See e.g.[12]  May,

2008 WL 2917766, at *8 - *9 (finding SORNA properly enacted under the Commerce

Clause); United States v. Senogles, --- F. Supp.2d ----, 2008 WL 2971447, at *7 - *10 (D.

Minn. Aug. 4, 2008)(same); United States v. Trent,  2008 WL 2897089, at * 3 (S.D. Ohio

July 24, 2008)(same);  Ditomasso, 2008 WL 1994866, at *10 (same); Fuller, 5:07-CR-46

(N.D.N.Y.), March 27, 2008 Mem.-Dec. & Ord., p. 8-10 (same); United States v. Zuniga,

2008 WL 2184118 (D. Neb. 2008)(same); United States v. Cochran, 2008 WL 2185427

(E.D. Okla. 2008)(same); United States v. David, 2008 WL 2045830 (W.D.N.C.

2008)(same); United States v. Holt, 2008 WL 1776495 (S.D. Iowa 2008)(same); United

States v. Akers, 2008 WL 914493 (N.D. Ind. 2008)(same); United States v. Utesch, 2008

WL 656066 (E.D. Tenn. 2008)(same); United States v. Mason, 510 F. Supp.2d 923, 933

(M.D. Fla. 2007)(same); but see Waybright, 2008 WL 2380946, at *4 - *11 (finding §

16913 unconstitutionally enacted); Powers, 544 F. Supp.2d at 1333 - 1336  (finding

SORNA unconstitutionally enacted).[13]

The only decision from a federal circuit court of appeals is the May decision from

the Eighth Circuit issued last week. See May, 2008 WL 2917766, at *8 - *9.   In May, the

Eighth Circuit upheld Congress's authority to enact SORNA under the Commerce Clause,

reasoning as follows:

For May to be convicted, SORNA requires the government to prove May

---

[12]The list of cases is not exhaustive.

[13]Powers was subsequently rejected in the same district. See United States v. Mason, 2008 WL
1882255 at *3 (M.D. Fla., April 24, 2008).

traveled in interstate or foreign commerce, and thereafter failed to register as required by SORNA. See 18 U.S.C. § 2250(a)(2)(B). SORNA thus derives its authority from each prong of Lopez - and most specifically, the ability to regulate "persons or things in interstate commerce" and "the use of the channels of interstate commerce." May was undeniably a "person ... in interstate commerce" in that he traveled and relocated between various states, and traveled among many other states. May did so via the "use of the channels of interstate commerce." It has been long established Congress may forbid or punish use of interstate commerce "as an agency to promote immorality, dishonesty or the spread of any evil or harm to the people of other states from the state of origin." Brooks v. United States, 267 U.S. 432, 436 (1925) (emphasis added). Congressional regulation of the channels of interstate commerce has also been upheld when the punishment "was intended to prevent the use of interstate commerce to facilitate ... forms of immorality." Id. at 437 (citation omitted). SORNA contains a sufficient nexus to interstate commerce.

May, 2008 WL 2917766, at *8.

The May Court further rejected the defendant's attempt to analogize SORNA to the

Gun-Free School Zones Act struck down in Lopez and the Violence Against Women Act

struck down in Morrison, holding that

SORNA contains a sufficient nexus to interstate commerce. . . . [and] includes an express and clear jurisdictional element for individuals not convicted pursuant to federal jurisdiction. . . . . Second, Lopez and Morrison related to the third Lopez prong: 'a regulation of activity that substantially affects interstate commerce.' SORNA is more easily supported by the first and second Lopez prongs.

May, 2008 WL 2917766, at *8 - *9.

This Court agrees with the reasoning of May that, under the first and second prongs

of the Lopez test, Congress did have authority under the Commerce Clause to enact §

2250(a) of SORNA. The statute regulates  "person[s] ... in interstate commerce" that

traveled and relocated between various states and that "use of the channels of interstate

commerce."  Indeed, Van Buren, like the defendant in May, is alleged to have traveled in

interstate travel and thereafter failed to register as required by SORNA.  Further,

22

defendants charged under § 2250(a)(1)(B) necessarily travel in interstate commerce.[14]

Defendant has not established that, in all circumstances, the statute would be invalid.

Accordingly, Van Buren's facial challenge to § 2250(a) fails.

Turning to § 16913, the Court notes that this portion of SORNA does not, by itself,

contain an interstate travel requirement before registration and updating is mandated.

However, virtually all of the courts that have addressed the constitutionality of SORNA,

with the exception of Waybright, *supra*, have relied upon the nexus to interstate travel

required for a § 2250(a) prosecution to support Congress's authority to enact the

legislation as whole.  See e.g. May, 2008 WL 2917766, at *8 (citing 28 U.S.C. §

2250(a)(2)(B) as the clear jurisdictional element supporting enactment of the statute);

Trent,  2008 WL 2897089, at * 3 ("Section 2250(a) contains a jurisdictional element,

applying, in addition to individuals convicted of certain federal offenses, only to those

required to register by SORNA who have traveled in interstate commerce. The inclusion of

such a jurisdictional element in the statute causes this Court to conclude that the statute

does not violate the Commerce Clause."); Ditomasso, 2008 WL 1994866, at *10

("SORNA, by regulating sex offenders who travel in interstate commerce, clearly regulates

---

[14]Some courts have indicated tangentially that  a prosecution under § 2250(a)(1)(A), which requires a predicate federal conviction, does not "raise Commerce Clause concerns." See Senogles, 2008 WL 2971447, at *7 ("As explained by the Court [] in United States v. Gould, 526 F. Supp.2d 538, 547 (D. Md. 2007), '[u]nlike the statutes in Lopez and Morrison, Section 2250(a)(2)(B) focuses on the registration of persons in interstate travel,' while the provisions of Section 2250(a)(1)(A) do not raise Commerce Clause concerns, as they require that the defendant have a previous conviction under Federal law."); United States v. David, 2008 WL 2045830 at *8 n. 11 (W.D.N.C., May 12, 2008)("The only other category of individuals who may be prosecuted under SORNA are those who have been convicted of a sex offense under federal law. 18 U.S.C. § 2250(a)(2)(A). This category, of course, has no Commerce Clause implications."); United States v. Ditomasso, 552 F. Supp.2d 233, 245 n. 7 (D.R.I. 2008)("The alternative jurisdictional 'hook' in section 2250 is the defendant's conviction for sex offenses under a federal law. 18 U.S.C. § 2250(a)(2)(A).").  Because Defendant has mounted a facial challenge under the Commerce Clause which has been opposed in kind by the government, and because the government has not advanced an argument that an underlying federal conviction absolves the statute from Commerce Clause concerns, the Court does not address this issue.

persons in interstate commerce."); <u>Fuller</u>, 5:07-CR-46 (N.D.N.Y.), March 27, 2008 Mem.-

Dec. & Ord., p. 8 (Upholding SORNA because "Section 2250(a) only punishes a sex

offender who travels in interstate commerce and knowingly fails to register or update a

registration.")(citing 18 U.S.C.§ 2250(a)(3)).   These courts clearly have treated 42 U.S.C. §

16913 and 18 U.S.C. § 2250(a) as interrelated components of the larger whole of SORNA

sufficient to overcome any deficiencies when viewing § 16913 in isolation. <u>See</u> <u>e.g.</u>  <u>Trent</u>,

2008 WL 2897089, at * 5  (rejecting a facial challenge to § 16913 because "Trent has not

established that no set of circumstances exists under which § 16913(a) would be valid

under the Commerce Clause. On the contrary, based upon this Court's [] reasoning []

rejecting Defendant's Commerce Clause challenge to § 2250(a), it would conclude that §

16913(a) can be validly applied to him, given that he is alleged to have traveled in

interstate commerce."); <u>Ditomasso</u>, 2008 WL 1994866, at * 10;[15] <u>see also</u> <u>Fuller</u>, 5:07-CR-

46 (N.D.N.Y.), March 27, 2008 Mem.-Dec. & Ord., p. 10;[16]  but see, <u>United States v.</u>

---

[15]The District of Rhode Island in <u>Ditomasso</u> addressed a similar argument to that advanced by Van
Buren:

> Defendant contends that the actual matter being regulated, registration, has no connection to
> interstate commerce and is entirely an intrastate matter. Section 2250, however, is focused
> precisely on the movement of persons in interstate commerce. Firstly, the matter being
> regulated is the registration of a class of persons - the class of sex offenders. Secondly, the
> function of this statute is to regulate the movement of sex offenders in interstate commerce.
> <u>See</u> <u>United States v. Hinen</u>, 487 F. Supp.2d 747, 752 n. 5 (W.D. Va. 2007). SORNA,
> including the criminal component, prevents sex offenders from being lost in the cracks
> *between* state regulations, a matter which is beyond the power of any one state to
> comprehensively address. <u>See</u> <u>United States v. Reynard</u>, 473 F. 3d 1008, 1023-24 (9th Cir.
> 2007) ("Courts have consistently recognized that federal statutes enacted to help states
> address problems that defy a local solution constitute an appropriate exercise of Congress's
> Commerce Clause power...."). SORNA, by its terms, does not focus on merely intrastate
> matters.

<u>Ditomasso</u>, 2008 WL 1994866, at *10 (emphasis in original).

[16]As stated by Judge Scullin recently in the unpublished <u>Fuller</u> decision:

(continued...)

Waybright, --- F. Supp.2d ----, 2008 WL 2380946, at *4 - *11 (D. Mont. June 11, 2008)(finding 18 U.S.C. § 2250(a) to be a proper exercise of constitutional authority, but finding that  42 U.S.C. § 16913, which requires all sex offenders to register regardless of whether they travel in interstate commerce, "is not a valid exercise of any of the congressional powers enumerated in the Constitution").

This Court agrees that § 16913 and § 2250(a) are interrelated such that a facial challenge to one part of the SORNA cannot be resolved without resort to the totality of the statute.  The weight of authority, and the reasoning from May, Sengoles, Trent, Ditomasso, and Fuller finding that Congress properly exercised its authority under the Commerce Clause in enacting SORNA, leads the Court to reject Defendant's facial challenge to § 16913.

Further,

Courts have consistently recognized that federal statutes enacted to help states address problems that defy a local solution constitute an appropriate exercise of Congress's Commerce Clause power, because this power includes the authority "to govern affairs which the individual states, with their limited territorial jurisdictions, are not fully capable of governing." See, e.g., Black, 125 F.3d at 459 (quoting South-Eastern Underwriters Ass'n, 322 at 552, 64 S.Ct. 1162) (internal quotations omitted); United States v. Sage, 92 F.3d 101, 105 (2d Cir. 1996); United States v. Faasse, 265 F.3d 475, 488-489 (6th Cir. 2001).

Reynard, 473 F. 3d at 1023-24.

---

[16](...continued)
SORNA's registration and penalty provisions cannot be viewed separately . . . .  See United States v. Howell, No. CR07-2013-MWB, 2007 WL 3302547, *18 (N.D. Iowa Nov. 8, 2007), adopted in part and rejected in part, 2008 WL 313200 (N.D. Iowa Feb. 1, 2008).  They are components of a symbiotic statutory scheme in which there is no criminal penalty unless there is a failure to register and, conversely, failure to register cannot be enforced without a criminal penalty.

United States v. Fuller, 5:07-CR-46 (N.D.N.Y.), March 27, 2008 Mem.-Dec. & Ord., p. 10.

In Reynard, the Ninth Circuit upheld Congress's authority under the Commerce Clause to enact the DNA Analysis Backlog Elimination Act of 2000 ("DNA Act").  Id.  The DNA Act authorized the FBI to establish a national index of DNA samples from convicted federal offenders (the Combined DNA Index System ("CODIS")).  The Raynard Court held:

> Congress's exercise of its Commerce Clause power in this situation does not offend principles of federalism. The Lopez Court warned against extending the scope of the Commerce Clause power to "effactually obliterate the distinction between what is national and what is local and create a completely centralized government." Lopez, 514 U.S. at 558, 115 S.Ct. 1624. The DNA Act does not intrude upon areas of traditional state or local authority. The Act regulates only federal offenders.  Moreover, it addresses a problem that the states are not capable of addressing on their own. In passing this legislation, Congress acknowledged that all fifty states had enacted legislation that required individuals convicted of state offenses to provide DNA samples for analysis and entry into the CODIS system. See H.R. Rep. 106-900(I), at *8. Congress noted, however, that there was, at that time, no legal authority that allowed DNA samples to be collected from individuals convicted of federal crimes. See id. Since states do not have the power to authorize the collection of DNA samples from those convicted of federal crimes, this problem was one that the states were not capable of addressing on their own.

Id. at 1023.

Reynard's reasoning applies here. While there is strength to Defendant's argument that a federal statute that simply requires federal and state sex offenders to register in their respective states is not necessary in light of the Megan Law enactments in every state, the purpose of SORNA is much more than mere registration.  SORNA is intended to allow the sharing of the information nationwide "to protect the public from sex offenders and offenders against children" through "a comprehensive national system." 42 U.S.C. § 16901, see  42 U.S.C. §§ 16912, 16918, 16919 (requiring SORNA registries to include standard information and be compatible with a national electronic database).  In addition, SORNA provides strong deterrent to an sex offender who may not otherwise be deterred

26

by state law penalties for non-registration, see United States v. Mi Kyung Byun, --- F.3d

----, 2008 WL 2579666, at *3 (9th Cir. July 1, 2008)("The consequences of failing to comply

with SORNA's registration requirements are significant "), or by the potential for state

apathy or oversight in prosecuting sex offenders who leave a jurisdiction. See Senogles,

2008 WL 2971447, at *7.[17]   Although every state has enacted intrastate registration

requirements, SORNA "was intended to close loopholes, especially to prevent sex

offenders from being lost to tracking efforts as they travel from state to state."  Ditomasso,

2008 WL 1994866, at * 8 (citing 152 Cong. Rec. at 8013); see Mason, 2008 WL 1882255,

at * 3 ("The harm perceived and addressed by SORNA was the ability of convicted sex

offenders to disappear 'off the radar screen' by moving across state lines to a new

jurisdiction. . . . Interstate travel and the movement through the channels of interstate

commerce are inherent in this threat.").  Thus, SORNA is intended to accomplish

something the states themselves had not accomplished, and something that has a

distinctly national character.  See 152 Cong. Rec. S8012, 8013 (daily ed. July 20, 2006)

(statement of Sen. Hatch) ("Laws regarding registration for sex offenders have not been

---

[17]In Senogles, the district court noted:

> that the crime of failing to register as a sex offender was legitimately created to prevent such
> individuals from disappearing "off the radar screen" by moving across boundary lines to a
> new jurisdiction, thereby establishing an inherent link to interstate travel. See, United States
> v. Mason, 2008 WL 1882255 at *3 (M.D. Fla., April 24, 2008); see also, United States v.
> Gillette, 553 F. Supp.2d 524, 2008 WL 943265 at *5 (D. Virgin Islands, April 7, 2008)(noting
> that the fact sheet, which was disseminated in conjunction with SORNA, emphasized that
> "[t]he bill will integrate the information in State sex offender registry systems and ensure that
> law enforcement has access to the same information across the United States, helping
> prevent sex offenders from evading detection by moving from State to State."), quoting Fact
> Sheet: The Adam Walsh Child Protection and Safety Act of 2006, 2006 U.S.C.C.A.N. S35,
> *S36 (2006).

2008 WL 2971447, at *7.

consistent from State to State [sic] now all States will lock arms and present a unified front in the battle to protect children.").  Whether directed to federal sexual offenders only, or to all sexual offenders who travel in interstate commerce, SORNA does not offend traditional notions of federalism because it addresses something each state does not have the power to accomplish - track registered sexual offenders as they move from state to state.

Finally, when viewing SORNA as an integrated whole, the enactment of § 16913 finds support under the Necessary and Proper Clause.

> The Necessary and Proper Clause permits Congress to regulate intrastate activities that do not involve interstate commerce if such regulation is necessary to make a regulation of interstate commerce effective. [Gonzales v. Raich, 545 U.S. 1, 35 (2005)](Scalia, J., concurring). "The relevant question is simply whether the means chosen are reasonably adapted to the attainment of a legitimate end under the commerce power."  Id.

Waybright, 2008 WL 2380946, at * 9.

Although the Court in Waybright did not view § 16913 as a necessary part of the "larger regulatory scheme" of SORNA, or "intended to fill in the gaps in an otherwise valid exercise of Congress'[s] power," id. at *10, this Court does not concur.  Indeed, in order to violate § 2250(a) (which the Waybright Court found to be constitutionally enacted pursuant to the Commerce Clause, id.  at *5 - *6), a defendant must first be "required to register under" SORNA, § 2250(a)(1), and then must "knowingly fail[] to register or update a registration as required by" SORNA. § 2250(a)(3).  As explained above, the purpose of SORNA is to provide a comprehensive national system of registration of sex offenders - including a listing of the offender's current residences, and the sharing of such information in order to protect the public from these individuals. The registration and updating requirements of § 16913 are necessary to make § 2250(a) -  a regulation of interstate

28

commerce - effective. See Jinks v. Richland County, South Carolina, 538 U.S. 456, 123 S.Ct. 1667, 1671, 155 L.Ed.2d 631 (2003)(The Court "long ago rejected the view that the Necessary and Proper Clause demands that an Act of Congress be '*absolutely* necessary' 'to the exercise of an enumerated power.'")(quoting M'Culloch v. Maryland, 17 U.S. (4 Wheat.) 316, 414-15, 4 L.Ed. 579 (1819)).  The means chosen  - registration and updating - are reasonably adapted to the attainment of a legitimate end under the commerce power. See United States v. Edgar, 304 F.3d 1320, 1326 (11th Cir.2002)(The Necessary and Proper Clause enables Congress to enact laws, subject to other constitutional constraints, "that bear a rational connection to any of its enumerated powers."). Accordingly, Defendant's motion on this ground is denied.

### e. Tenth Amendment

Defendant argues that "SORNA's registration requirements, which impose a federal obligation on offenders to register in individual state sex offender registries, are an unconstitutional encroachment of federal power on state sovereignty" in violation of the Tenth Amendment.[18]  In this regard, Defendant asserts that until the State of New York actually implements the administrative components of SORNA (which Van Buren concedes Congress can constitutionally mandate by virtue of the spending power of the Tenth Amendment, see Def. Mem. L. p. 19, n. 5), Congress "has no power to compel local law enforcement to accept registrations from federally mandated sex offender programs." Id. p. 19. The argument is without merit.

---

[18]The Tenth Amendment states that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  U.S. Const. amend. X.

Because Van Buren was required to register and update his registration status under New York law, SORNA's requirements do not impose any additional requirements upon him which he does not already have under state law.  He "has not suffered any injury as a result of Congress' alleged commandeering of state officials" and, without an injury causally related to the complained-of conduct, he lacks standing to assert his Tenth Amendment claim.  Waybright, 2008 WL 2380946, at *12 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

Accordingly, the motion on this ground is denied.

**f.    Non-Delegation Doctrine**

Van Buren also asserts that 42 U.S.C. § 16913(d) violates the non-delegation doctrine of the United States Constitution because this section of SORNA "permit[s] the Attorney General to legislate the scope of the Act's retrospective reach."  Def. Mem. L. p. 19.

The Constitution vests Congress with the sole authority to legislate. U.S. Const., Art. I, §§ 1, 8. A.L.A.  "Congress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested."  Schechter Poultry Corp. v. United States, 295 U.S. 495, 529 (1935).   However, "[t]he non-delegation doctrine does not keep Congress from obtaining the assistance of its coordinate branches; it merely requires Congress to provide clear guidance and delineate the boundaries of delegated authority."  Waybright, 2008 WL 2380946, at *14 (citing Mistretta v. United States, 488 U.S. 361, 372-73 (1989)). Limited delegation of authority does not violate the non-delegation doctrine. See id.; Fuller, 5:07-CR-46 (N.D.N.Y.), March 27, 2008 Mem.-Dec. & Ord., at pp. 12-13; United States v. Roberts, 2007 WL 2155750, *1-*2 (W.D. Va. July 27,

2007);   United States v. Hinen, 487 F. Supp. 2d 747, 751 (W.D. Va. 2007).

> "In determining what [Congress] may do when seeking assistance from
> another branch, the extent and character of that assistance must be fixed
> according to common sense and the inherent necessities of the government
> coordination." United States v. Mistretta, 488 U.S. 361, 371-72 (1989). As a
> result, "[s]o long as Congress 'shall lay down by legislative act an intelligible
> principle to which the person or body authorized to [exercise the delegated
> authority] is to conform, such legislative action is not a forbidden delegation
> of legislative power." Id. at 372.

Senogles, 2008 WL 2971447, at * 11.

"[W]hen § 16913 is read as a whole, it is clear the statute only authorizes the

Attorney General to promulgate regulations in a limited number of circumstances."

Waybright, 2008 WL 2380946, at *14.  "The Attorney General's authority under § 16913(d)

extends only to 'those currently unregistered offenders literally unable to comply with (b)

because of the age of their convictions . . . '" Fuller, 5:07-CR-46 (N.D.N.Y.), March 27,

2008 Mem.-Dec. & Ord., at pp. 12-13 (quoting Roberts, 2007 WL 2155750, at *2).  The

limited nature of this delegation neither affords the Attorney General the authority to

legislate, nor offend the principles of the non-delegation doctrine.  Waybright, 2008 WL

2380946, at *14 - *15;  Senogles, 2008 WL 2971447, at * 12. The motion in this regard is

denied.

### g.    Right to Interstate Travel

Van Buren claims that  § 2250(a) violates his constitutional right to travel.  He

argues that by making it a federal crime to fail to update his registration status within 3

days of a change in residence, SORNA unduly infringes his right to enter and leave

another state on a "brief and temporary vacation" of more than 3 days. Def. 5/16/08 Ltr.

Brief. The argument is without merit.

31

First, Van Buren is charged with violating SORNA because he changed his residence yet failed to update his registration within three days of that change. See Indictment; Bill of Particulars; 42 U.S.C. § 16913(c); 18 U.S.C. § 2250(a). Although SORNA does not define residence, it defines to "reside" to mean "with respect to an individual, the location of the individual's home or other place where the individual habitually lives." Inasmuch as SORNA's definition of to "reside" comports with the traditionally-accepted legal definition of "residence," see Martinez v. Bynum, 461 U.S. 321, 330 (1983)("Although the meaning may vary according to context, 'residence' generally requires both physical presence and an intention to remain"), the jury will have to decide whether Van Buren changed the place he habitually lived sometime between February 20, 2008 and March 7, 2008. The question of whether Van Buren changed his residence during the period covered by the Indictment is an evidentiary one that must be addressed at trial and is not susceptible to resolution on this motion. However, under the facts as asserted, a jury could reasonably conclude that Van Buren changed his residence during the period covered by the Indictment as opposed to merely taking a "brief and temporary vacation."

Second, although the statue criminalizes conduct that occurs within a short period of time and which could conceivably fall within a "brief and temporary vacation," the statute does not violate the constitutional right to travel.

> The right to travel is a fundamental right protected by the U.S. Constitution. Shapiro v. Thompson, 394 U.S. 618, 629-30 (1969). It is derived from the Privileges and Immunities Clause of the Fourteenth Amendment and the Due Process Clause of the Fifth Amendment. Id. at 631. The right to travel protects a person's right to enter and leave another state, the right to be treated fairly when temporarily present in another state, and the right to be treated the same as other citizens of a state when moving there

permanently. <u>Saenz v. Roe</u>, 526 U.S. 489, 500 (1999).  A statute that unreasonably burdens the right to travel is subject to strict scrutiny and thus must be justified by a compelling government interest. <u>Id</u>. at 499; <u>Shapiro</u>, 394 U.S. at 627, 634.

<u>Waybright</u>, 2008 WL 2380946, at *12 .

Assuming, *arguendo*, that Van Buren changed his residence during the period alleged in the Indictment, and assuming further that SORNA's three-day rule required that he update his registration information during a "brief and temporary vacation" to North Carolina, he was able to comply with the constraints of SORNA by presenting himself before the appropriate state official in North Carolina, and by informing that official of all of his relevant personal information. <u>See</u> <u>Fuller</u>, 2008 WL 2437869, at * 2. Thus, as concluded by the District of Montana in <u>Waybright</u>:

> [Section] 2250(a) does not unreasonably burden the right to travel. It does not prevent sex offenders from traveling or relocating to other states; it merely requires them to notify law enforcement when they do. Section 2250(a) also does not require states to treat sex offenders who relocate differently than sex offenders already present in a state. Rather, under SORNA, all sex offenders, whether new or long-time residents, must register.

<u>Waybright</u>, 2008 WL 2380946, at *13; <u>see</u> <u>Senogles</u>, 2008 WL 2971447, at *11 (SORNA does not prevent sex offenders from traveling, it merely requires that they notify law enforcement when they do).  The motion on this ground is denied.

33

## IV.      CONCLUSION

For the reason discussed above, Defendant's motion to dismiss the Indictment is

**DENIED**.


**IT IS SO ORDERED**.

DATED: August 8, 2008


Thomas J. McAvoy
Senior, U.S. District Judge